**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| SUSAN MORGAN, | : | Case No. 3:19-cv-361 |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

**I.     INTRODUCTION**

In November 2015, Plaintiff Susan Morgan filed an application for Disability Insurance Benefits and for a period of benefits. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Kevin R. Barnes concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action. Plaintiff seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 7), the Commissioner's Memorandum in Opposition (Doc. No. 10), and the administrative record (Doc. No. 6).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since December 2, 2014. Plaintiff was forty-three years old on her onset date of disability. Accordingly, she was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). She has at least a high school education.

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. No. 6-2, PageID 39-53), Plaintiff's Statement of Errors (Doc. No. 7), and the Commissioner's Memorandum in Opposition (Doc. No. 10). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as the Social Security Act defines it—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e.,

"substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241(citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence,

3

'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.    THE ALJ'S DECISION

As noted previously, it fell to ALJ Barnes to evaluate the evidence connected to Plaintiff's applications for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

- Step 1: Plaintiff has not engaged in substantial gainful employment since the alleged disability onset date of December 2, 2014.

- Step 2: She has the following severe impairments: migraines, mixed connective tissue disease with lupus and Raynaud's disease, Sjogren's syndrome, neuralgia, polymyalgia, polyarthralgia, idiopathic scoliosis, paresthesia, edema, mild degenerative joint disease of the right shoulder, eosinophilic esophagitis, and degenerative joint disease of the right knee.

- Step 3: She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

- Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to following limitations: (1) standing/walking no more than 6 hours in an 8-hour workday with normal breaks and sitting no more than 2 hours in an 8-hour workday with normal breaks; (2) alternating sitting/standing every 60 minutes provided not off-task more than

>           10% of the workday; (3) never climbing ladders, ropes, or scaffolds; (4) occasionally climbing ramps and stairs, balancing, stooping, crouching, or kneeling; (5) occasionally reaching overhead bilaterally; (6) avoiding excessive noise; (7) avoiding excessive vibration; (8) avoiding hazardous machinery and unprotected heights; and (9) avoiding loud and very loud work environments."
>
> Step 4:     She can perform her past relevant work.
>
> Step 5:     She can also perform a significant number of jobs that exist in the national economy.

(Doc. No. 6-2, PageID 41-52). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 53.

## V.  DISCUSSION

Plaintiff presents several points of error in the present case. These alleged errors primarily center on the residual functional capacity assessment and the evaluation of the medical opinion evidence. For the reasons set forth below, these assertions lack merit.

### A.  Residual Functional Capacity Assessment

Plaintiff argues that the residual functional capacity assessment does not properly accommodate some of her severe impairments including her mixed connective tissue disease with lupus and Raynaud's disease, and her migraine headaches. The undersigned finds that substantial evidence supports the assessment as to these impairments.

It is well-established, based on social-security regulations and case law, that the ALJ assesses and determines a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1545(a) ("We will assess your residual functional capacity based on all the relevant

5

evidence in your case record"); 20 C.F.R. § 404.1546(c) ("the administrative law judge…is responsible for assessing your residual functional capacity"); 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding residual functional capacity is reserved to the Commissioner); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity'").

Plaintiff first contends that exposure to cold temperature impacts her ability to work due to her mixed connective tissue disease with lupus and Raynaud's disease. She asserts that the ALJ did not consider these effects in assessing her RFC despite acknowledging that her "symptoms consistent with Raynaud's disease lasted for 30 minutes to one hour and resolved once the claimant was able to get warm." (Doc. No. 6-2, PageID 42).

Following this statement, the ALJ cited to a progress note from Jessica Luckenbill, PA-C. This progress note reflects that Plaintiff reported her symptoms "last a half hour to hour" but resolve "once she gets warm." (Doc. No. 6-9, PageID 990). Yet, this was not Ms. Luckenbill's objective observation, but instead Plaintiff's subjective complaints. Plaintiff does not cite to any objective evidence that supports these complaints. Likewise, she does not point to objective evidence that identifies the specific symptoms that she experienced as a result of this impairment or how these symptoms would affect her ability to work. Therefore, the undersigned declines to find that the ALJ erred in this regard.

In addition, no medical opinion suggests that Plaintiff would require a limitation regarding exposure to cold temperatures. Yet, even if such a limitation found additional support in the record, the undersigned is not convinced that its exclusion here would rise to the level of reversible error because none of the jobs set forth in the ALJ's non-disability decision require exposure to extreme cold. *See* Credit Card Control Clerk, DICOT 249.367-026, 1991 WL 672328; Photographer, Still, DICOT 143.062-030, 1991 WL 647131; Manager, Retail Store, DICOT 185.167-046, 1991 WL 671299; Routing Clerk, DICOT 222.687-022, 1991 WL 672133; Tacking Machine Operator, DICOT 786.685-034, 1991 WL 681084; Storage-Facility Rental Clerk, DICOT 295.367-026, 1991 WL 672594.

Plaintiff takes issue with other restrictions that were not included in her residual functional capacity assessment—such as off-task allowances and absences. She asserts that, while the ALJ recognized that her severe migraine headaches are accompanied by photophobia and phonophobia, he "failed to account in any way for how these conditions would affect [her] ability to stay on task in the workplace, or be present at work, when she is suffering from a migraine headache and these conditions." (Doc. No. 7, PageID 1263).

Yet, similar to before, Plaintiff fails to point to sufficient medical evidence that justifies such limitations. Plaintiff highlights the fact that the ALJ accommodated her migraine headaches in her residual functional capacity through limitations such as avoiding excessive noise and vibration, and avoiding loud and very loud work environments. (Doc. No. 7, PageID 1263). However, she argues that these limitations were not enough to

7

accommodate her "longstanding history of migraine headaches lasting up to 48 hours with occasional episodes lasting 2 ½ weeks." *Id.* (quoting Doc. No. 6-2, PageID 43).

The undersigned disagrees. Substantial evidence supports the limitations that pertain to Plaintiff's migraine headaches. State agency reviewing physicians, Drs. Abraham Mikalov and Maria Congbalay, indicated that Plaintiff "reports sensitivity to sound" so they both recommended that she "avoid concentrated exposure" to noise and vibration. (Doc. No. 6-3, PageID 157). Neither physician offered limitations related to time off-task or absences. Physical consultative physician, Dr. Ellen Offutt, acknowledged Plaintiff's migraine headaches, but did not offer any related limitations. (Doc. No. 6-9, PageID 1250-1254). Likewise, while treatment records from treating physician, Dr. Judith O'Connell, reference Plaintiff's migraine headaches and her sensitivity to sound, Dr. O'Connell did not offer any related limitations. (Doc. No. 6-8, PageID 795-797, 800).

Plaintiff also maintains that her hearing testimony about wearing headphones in her past work supports limitations for time off-task and absences. But this too is unpersuasive. It is true that Plaintiff testified to wearing headphones at her past work due to loud noise. (Doc. No. 6-2, PageID 134). However, the ALJ accounted for Plaintiff's sensitivity to loud noise in her residual functional capacity. Assumingly, by preventing her from working in loud or very loud environments with excessive noise and vibration, Plaintiff would not require headphones at work, which she further testified "caused her to have migraines, horribly bad" since she had them on her head at all times. *Id.*

Lastly, at the hearing, the vocational expert testified that two related limitations would be work preclusive including being absent at least two times per month or off-task for twenty percent of the workday. Plaintiff suggests that this testimony demonstrates that the residual functional capacity is unsupported by substantial evidence. However, contrary to Plaintiff's position, this testimony alone does not demonstrate that error occurred in formulating her residual functional capacity. *See Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) ("Indeed, the ALJ may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations"). As discussed above, the ALJ accommodated Plaintiff's limitations to the extent they were supported by the evidence.

Therefore, Plaintiff's first asserted error is without merit.

### B. Medical Opinion Evidence

Plaintiff also contends that the ALJ did not properly weigh the medical opinion rendered by physical consultative psychologist, Dr. Ellen Offutt.[1] She argues that Dr. Offutt's opinion demonstrates that she is incapable of overhead lifting and/or reaching bilaterally due to her degenerative joint disease, and that the reasons for affording Dr. Offutt's opinion "partial weight" are unsupported by substantial evidence.

---

[1] In his decision, the ALJ mistakenly refers to Dr. Ellen Offutt as Dr. Michael Bosworth. This error is harmless because the ALJ otherwise accurately refers to Dr. Offutt's examination report and related testing results, which Plaintiff does not dispute.

9

Regardless of the source, Social Security Regulations require an ALJ to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1527(c). In deciding what weight to assign an opinion, an ALJ must consider certain factors such as the examining relationship, supportability, consistency, specialization and other factors. *Id.*

In the present case, Dr. Offutt indicated that Plaintiff "would not be able to lift above her head or to reach above her head" due to her degenerative joint disease in the right shoulder which caused reduced range of motion. (Doc. N. 6-9, PageID 1254). As for her other abilities, Dr. Offutt offered that Plaintiff "has some limitations with her back" and that degenerative changes in her knee may "cause her to develop some discomfort if she stands for periods of time." *Id.* She also indicated that although Plaintiff "had normal manipulative strength [she] might have difficulty picking up things that were very fine." *Id.* at 1253. Ultimately, as to her ability to work, Dr. Offutt indicated that Plaintiff's ability to bend, stoop, lift, walk, crawl, squat, carry, travel, and push and pull heavy objects would be "at least severely impaired due to the stated factors." *Id.* at 1254.

Upon review, the ALJ determined that Dr. Offutt's assessment of Plaintiff's physical impairments was "consistent with the balance of record." (Doc. No. 6-2, PageID 47). However, Dr. Offutt's assessment of Plaintiff's physical abilities, as a result of those impairments, was "vague without specific functional limitations" and was inconsistent with some of her examination findings. *Id.* He assigned her opinion "partial weight." *Id.*

10

Substantial evidence supports this assessment. The ALJ reasonably discredited Dr. Offutt's opinion because it was vague and inconsistent. *See Dillard v. Comm'r of Soc. Sec.*, No. 2:17-cv-781, 2018 WL 4691053, at *6 (S.D. Ohio, Oct. 1, 2018) (Graham, D.J.) (finding that the ALJ properly discounted the medical opinion because it was vague); 20 C.F.R. § 404.1527(c)(4). For instance, Dr. Offutt determined Plaintiff had "some limitations with her back." However, Dr. Offutt did not elaborate on these limitations. At most, Dr. Offutt indicated that Plaintiff would be "at least severely impaired" in various abilities, such as bending and stooping. Likewise, this opinion was not supported by Dr. Offutt's observations. On examination, she observed that Plaintiff had good range of motion and her straight leg test was negative. (Doc. No. 6-9, PageID 1254). Similarly, as described above, Dr. Offutt determined that Plaintiff "might" have difficulty picking up fine items despite having normal manipulative strength on exam. *Id.* at 1253.

Dr. Offutt's opinion as to Plaintiff's ability to lift and reach overhead also presents as inconsistent with her observations on physical examination. Dr. Offutt observed that Plaintiff was "tender over her right shoulder" and had "reduced range of motion." (Doc. No. 6-9, PageID 1252). She had "tenderness between her shoulder blades." *Id.* at 1253. More specifically, Dr. Offutt observed a 20-degree reduction in flexion, but normal extension. *Id.* at 1256. She also observed a 20-degree reduction in adduction and 40-degree reduction in abduction. *Id.* However, internal and external rotation were normal. *Id.* Additionally, Dr. Offutt did not observe any deficiencies in Plaintiff's left shoulder—

11

which further brings into question Dr. Offutt's broad opinion that Plaintiff "would not be able to lift above her head or to reach above her head" at all. *Id.* at 1254.

Plaintiff also contests the fact that more weight was afforded to the opinions of state agency reviewing physicians, Drs. Abraham Mikalov and Dr. Marie Congbalay. However, while these opinions were afforded more weight, the ALJ rendered greater restriction as to Plaintiff's ability to reach overhead than offered in the reviewing physicians' opinions. Dr. Mikalov did not find that Plaintiff had any limitation in this regard. Alternatively, Dr. Congbalay, determined that Plaintiff would be limited in her ability to reach overhead on her right side, and therefore, limited her to occasional overhead reaching with her right arm—rather than bilaterally. (Doc. No. 6-3, PageID 169). Ultimately, the ALJ struck a balance between these opinions and Dr. Offutt's opinion by limiting Plaintiff to reaching overhead bilaterally no more than occasionally. (Doc. No. 6-2, PageID 46). For the reasons set forth above, this determination is supported by substantial evidence.

Accordingly, Plaintiff's Statement of Errors is without merit.

**IT IS THEREFORE ORDERED THAT:**

1. The Commissioner's non-disability determination be **AFFIRMED**; and

2. The case be terminated on the docket of this Court.

August 11, 2021                        *s/Sharon L. Ovington*
                                                              Sharon L. Ovington
                                                              United States Magistrate Judge